should be ready. Thank you. Camera for your case number 1232 68 and 1241 73. Ethel Harmon versus Eric Holder. Oral argument not to exceed 15 minutes per side. Miss lists for the appellant. May it please the court. My name is Maris list. I would like to reserve three minutes for a brief. I don't usually handle cases that involve so many statutes. And usually when it's statutory interpretation it's like, is this a crime and aggravated felony or a crime of moral turpitude. So it's a bit of an alphabet soup. But basically two main statutes are involved. One is a six USC 276 G, which is the definition of an unaccompanied alien child. And the other is the William Wilberforce trafficking act, which is abbreviated as a Tevpro. If, if, if I may, um, two 35 D seven permanent protection for certain at risk children, um, which adds two sections to the immigration and nationality act, you know, that are relevant to this case two Oh eight, a two E which says that safe third country and the one year filing deadline shall not apply to unaccompanied alien children. And a two Oh eight B three C says that an asylum officer at the agency administratively shall have original jurisdiction over cases for unaccompanied alien children. The most important point that I want to raise this morning is something that I missed in respondents brief on page 29. One of the respondents concern that I did not specifically rebut is that unaccompanied alien children are, um, this is what they said unaccompanied alien children are afforded greater protection than an alien child listed as a derivative on their parents application, meaning somebody who has a parent, um, she may be appointed a child advocate and counsel to assist her in her immigration proceedings and is excused from the one year filing deadline. And then in the next sentence, uh, the government says by way of contrasting and the alien that has a parent with an unaccompanied alien child, that, um, an alien with a parent is not entitled to any legal assistance. So I just want to make it clear because, um, if you look at the statutes, the government relied on, um, unaccompanied alien children are not entitled to legal assistance. Um, there's so a key primary distinction you make is that an unaccompanied alien child, um, purportedly is, is done at 18, so to speak, whereas an accompanied child who already has the benefit of a parent or guardian there, um, gets protection to age 21, can be filed on by behalf of his or her parents, and then gets to ride on their application. I mean, isn't that your primary distinction anyway? But in case it was a current, a concern to you that the government would be burdened with provide, because there are so many unaccompanied alien children, thousands, in case you were concerned that interpreting the statute the way that I was proposing is, would be a financial burden. Because if you look at the, um, sections that the government cites about being entitled to legal counsel, it just says access to counsel and, um, like 235, uh, A5D says that, uh, the, they'll be provided access to counsel. And then, um, for 235B6, it says the Secretary of Health and Human Services is authorized to appoint a child advocate. They're not required to. So, you know, if somebody was in their 20s, like Ethel or, you know, 40 like Anaheim, which is an example of my brief, I would say although they're authorized to appoint a child advocate, they wouldn't. Okay. And, um, 235C5 says that the Secretary of Health and Human Services, as much as practicable, will try to find pro bono counsel for, for the unaccompanied alien children. And they, it specifically says consistent with 8 U.S.C. 1362, which is the general right to counsel at no expense to the government that every alien has. So, you know, that might make a significant difference. Um, it, it, it, it. Do you think that the two arguments that you make regarding USCIS and, um, the one-year time period have to be resolved together? Uh, about the, um, the asylum officer having initial jurisdiction and also about, well, um, I, I. Couldn't you have, couldn't you have one without the other? Because they, they differ and they have different language. I, I, I suppose that you could and that's something that I think the Alamigas brief, uh, put forth. Um, I will tell you why I think that they would go together. I'd be happy with any sort of win. You know, Ethel, I, you know, Ethel had a terrible life. I'm not going to tell you her story. Um, and, and this is something that affects so many people. And I'm just privileged to be able to do this pro bono. Um, but... Why don't you begin with the one-year time frame for the unaccompanied child, alien child? I think that's, that, that could bear more explanation. Okay. Um, well, um, I, I love the way that Ayla had in their brief, like explained it. The statue about access, about, uh, access to, uh, applying for asylum, um, for every person, you know, let's say a grown up, um, you, you look at a certain time period, Ayla called it a clock. You look at the one year after they stepped foot in the United States and you see whether they applied for asylum. And so, uh, this 208A2E is like another section connected to, you know, the sections for regular grownups. Um, and, and so, uh, the proper way to, um, interpret it would be to say that they also have a clock, a you look at the one year after they enter and you see whether they were an unaccompanied alien child. And that is how you determine whether safe, you know, country and whether the one year deadline applied to them. So the shall not language under your argument comes into play upon that one year timeframe when they become an unaccompanied alien child. Yes, that's, that's right. And, and, you know, if, if you think about it, nothing magical happens to somebody between when they're 17 and 363 days and when they turn 18. And in fact, there's still a child, even under the immigration nationality act. Um, the, the headings that Congress gave, although they're not part of the statute, um, they certainly, uh, make it clear that they were expecting permanent protection for these people in terms of the type of disability that they have, that they can't get their act together to, you know, file an asylum application when they're under age 18, those disabilities don't go away when they're, you know, 18 and a half. Um, you know, they still have nightmares. They still have to worry about, you know, food and school and whatever. And they don't have a car necessarily to drive to the asylum office. Do I understand your argument and the amicus position correctly in that there is then no time limit of any kind whatsoever, a 60 year old person who came into this country as an unaccompanied minor child, could at age 60, when encountering some sort of problem with immigration authorities, say, I want to apply for asylum. Assuming that they never left in the interim. Fine. Okay. Yeah. Whatever the those predicates might be, but that's your position. And that's exactly what happened to Mr. Almaham. Um, you know, the first case that I had with Tefpra and, you know, it was a new statute and there's no, uh, cases anywhere explaining it. And I read it and I was like, oh my gosh, he can apply for asylum. He's 40 years old. And, um, the government in that case actually agreed with the interpretation. And then he, he, but the court in an exercise of caution, they issued a show cause order and they said file asylum and see what happens. And we did, and he got an appointment and he actually showed up and they said, oh, wait a minute, you still have an open removal case. So after that's terminated, we will, you know, hear your asylum application. And they even sent us a letter saying that, which is at the record at 24. And I know that the, the way that the asylum office, the agency that is the expert in asylum is, is, is administrating it is that they're letting those people, even a 40 year old apply for asylum. But I, I guess that, um, and actually when I got the order from Mr. Alnaham, I asked, I made a motion for an amended order and I asked the court, could you just put his age in the, in the order and it's in the orders in the record, um, at 21, it might even say amended order because I wanted, I knew that this could possibly in the future be a problem of, you know, when they realize what happened that they might want to backtrack or something, you know, even though it was really obvious and everybody went along with it. But it's also your contention and that's what Congress intended. Absolutely. Absolutely. I mean, even in the house and Senate early version of the bill, it always said both sides, permanent protection for at risk children. And it makes sense that these people need that kind of protection because they have a lot of, you know, they could have, I mean, like take Ms. Harmon, you know, she, she was raped. She lost her parents when she was very, very young. Um, she couldn't even, you know, even though like her brother helped her apply for TPS, which is a special relief for people from, um, you know, troubled, troubled countries that are that's temporary, you know, but then after she left her brother, you know, he dropped the TPS. Yeah. She, she never, she couldn't get it together. And then she eventually tried to get it together and didn't file an appeal. Right. You know, she, she, she, she couldn't handle it. Your position is that TAFPRA effectively says there's this one year rule for asylum. And when you walk into America as an unaccompanied alien child and you qualify as an unaccompanied alien child, then the statutory language says that one year provision in the statute no longer applies. That's correct. Ever. Ever. That's correct. And that's how it has been interpreted in real life in the Alderham case, for Thank you. And I just want to mention in terms of like, there are several criteria for Skidmore deference in case you give the agent agency, you know, and you know, thoroughness of their consideration, validity of their reasoning, you know, for example, in the second BIA opinion, they said something about, Oh, this statute is about putting people in foster care. It can't possibly have to do with this. Even the government didn't mention anything in their brief about, you know, foster care being an issue. I mean, I don't think that they would say that, you know, a 60 year old would go into foster care. We're only talking about the one year deadline and also where the case should be. And the reason it should be at the asylum office is because it's non-adversarial. There's no prosecutor, you know, scaring the person, cross-examining, and even though they're standing... Your amicus brief would suggest that that language could partake of a different interpretation that filed by has a temporal component, correct? They said that I'm offering another... I mean, they might have said that, but I think that that's wrong. You know, they have, you know, issues that they decided they're going to focus on that, but... I think you're done. Okay. Thank you so much. We will have your rebuttal. Thank you. Good morning. May it please the court. Kelly Walls for the Attorney General. The plain language of the TVPRA, which is how I'll refer to the Trafficking Victims Protection Act, states that it applies to aliens who have not attained the age of 18. Because Ms. Harmon was 23 years old at the time she filed her asylum application, she did not qualify as an unaccompanied alien child, and thus the TVPRA burden of proof and jurisdiction provisions do not apply to her. The one-year clock, as my colleague Ms. Ellis referred to it, in fact is a burden of proof provision. If you read 8 U.S.C. 1158 A2B, it says to establish eligibility to apply for asylum, an alien must show, by clear and convincing evidence, that the application has been filed within one year after the date of the alien's arrival in the United States. What the TVPRA did is simply take that burden away from an unaccompanied alien child to show their date of entry into the United States. Except that the statutory language E says subparagraphs A and B shall not apply to an unaccompanied alien child. The only place that that one-year time limit is set is in paragraph B. So if those no longer apply, then there's no time limit. How can that just be a burden of proof when the time limit no longer exists? Because if you read it, it's not really a time limit. That subparagraph B, it's not really a clock. Everyone thinks of it as a clock because of what they actually need to show. But if you look at what it says, it says the alien must show, by clear and convincing evidence, that the application has been entered. What removing that requirement does is mean that the unaccompanied alien child does not have to show, by clear and convincing evidence, that they entered, they have filed their application within one year. They don't have a burden of proof to show any entry. So it simply is a burden of proof. It's not a one-year clock. Where do you get the one-year time frame, which is what you want to say you cannot do? And I'm saying that it is in that same subparagraph B. Well, how does that not go away if it doesn't apply? How do you get to keep the one-year time frame and get rid of the burden of proof-ish? Okay, so what I'm saying is if you read the part that it's a subparagraph, it's USC 1158A2B, says subparagraph B shall not apply to an unaccompanied alien child. So an unaccompanied alien child does not have to show, by clear and convincing evidence, that they filed their asylum application within one year of entry. An unaccompanied alien child is defined as an alien who has not attained the age of 18. If the alien has attained the age of 18, they are no longer an unaccompanied alien child, and therefore subparagraph B does apply to them. So that's why I'm saying it's actually a burden of proof provision rather than, we're not counting a clock, we're saying when you show up in immigration court, or first before the asylum officer, you, unaccompanied alien child, are exempt from this burden of proof provision. Assuming there were a form, I have no idea if there is. Sure. When did you come to this country? A child can check that and it can be, it doesn't matter how long ago. It could be, she could have been two days old, or she's now 17 or whatever, or she could have shown up last week. We can make up a hypothetical that the alien entered by himself at age 10 and at age 17, somebody helped him out and said, hey, you should really file for asylum. Those seven years, it doesn't matter. He's still under the age of 18. He has not attained the age of 18. Therefore, assuming he's unaccompanied, and that's not an issue in this case, he benefits from the TVPRA burden of proof provisions because he doesn't have to show one year, an asylum application filed within one year of entry. If he is no longer an unaccompanied alien child, if 1158A2B does not apply to him, because it says it shall not apply to an unaccompanied alien child, so if he is no longer an unaccompanied alien child, then showing the filing period is a requirement of his asylum application. Go ahead, Judge. No, please. No, please, go ahead. Then how does that square with the preexisting rules regarding children who are accompanied by parents and can ride on their parent's application, one made on their behalf until they're 21, and then can continue to ride as their parent's application is pending? Sure. This, again, only refers to unaccompanied alien child children, so children who don't have a legal guardian. That's the distinction. It seems to me that what we have is this new William Wilberforce Act that is created to address a very particular problem, children who come to America without anyone to guide or guard them. What already existed at that time was a provision that protected, that enabled them to come in and address their minority or address, I think, middle status. I've forgotten the other arm of that. You said the exceptions to the one year that already existed. Yes. Why? What would Congress have been doing if what they already had took care of the exact same issue? It didn't, though. This is the difference. This burden of proof provision does not ever apply to an unaccompanied alien child if they're an unaccompanied alien child at the time the application was filed, because that's what is required. It says, shall not apply to an unaccompanied alien child. Let's say we've got an alien like Ms. Harmon who came in as an unaccompanied alien child, but waited until she turned 24, almost 24, to file her asylum application. She can still benefit from the preexisting regulations and INA provisions, because she can show that she is accepted or has an excuse for filing late. Not that she's completely exempt from it, but that she has to show that because of her minority, she did not file within one year. In her case, it would be a little bit trickier because she waited until almost the age of 24, so she's really going to have to show from when she entered at 10 to 18, which she didn't file because of her minority, and then from 18 to 23 for some other reason. That begs the question, because the issue is you have this protection in place. Congress says, this is not good enough. We are going to do something else for children who come to our shores unaccompanied and bear the scars and the burdens of where they came from. We are going to give them something more. To me, it doesn't answer the question to say, oh, you still have the earlier one. The question is congressional intent. What did they intend to add to that already existing protection with this? Because if they added nothing, which somewhat appears to me to be your argument, then the act is illusory. It doesn't provide, there's no construction that's providing anything where Congress clearly took something up with the intent of providing additional permanent protections. No, and I'm sorry, perhaps you've misunderstood my argument. An alien who has not attained the age of 18 doesn't have to show any proof whatsoever of their time of asylum application was filed. That's what the TVPRA did. An alien who is over the age of 18, regardless of whether or not they were accompanied or unaccompanied when they entered the United States, still has to show proof of entry and they have to show some sort of disability, whether it be minority, mental capacity, hospitalization, something that prevented the filing. They still have a burden of proof to show that when they entered and when their asylum application was filed and why they didn't file it within one year. But if minority is a given provision, then you already have that protection. No, because that would only get the alien up to 18. What we're saying is for the children who have not, so you've got the 15 year old, that's arguably a very different situation than a 23 year old. The 15 year old doesn't have to show that they jumped on the train in Mexico and rode it up to the border and snuck across. We're not requiring that of the 15 year old. The 23 year old, we're saying, look, you've been here for, you know, however long, in Ms. Harmon's case, 14 years nearly, that you need to have some evidence of what was going on in your 14 years here, because now you're an adult and as an adult, you have many more responsibilities than a child under 18. For all 14 years or is it for the five years? The one year requirement still applies, but her minority could serve as an exception to it. That's what I'm saying in Ms. Harmon's case, she would have to show from 10 to 18, that could be a minority, but 18 to 24, that's going to have to be something else. I think that if we look at the whole TVPRA, we also see that it clearly was intended to apply to minor children, not people who are 40 wanting to file an asylum application after living in this country for over three decades. And why did we apply it to Mr. Alnaham? We have some significant concerns discussing the specifics of Mr. Alnaham's case. There are very stringent confidentiality requirements regarding asylum cases, and while I know Ms. List was the counsel of record on that case, there's been nothing presented from Mr. Alnaham releasing her to discuss the specifics. Certainly, because specifics don't matter. He was 40. Well, I will just say that in that case, the client agency at CIS did agree to take his case. In this case, there has been no indication from them after consultation. Was there opposition? What was the Justice Department's position in that process? We did not oppose the motion to send it to CIS, because CIS... Hypothetically, it may have been because he was an important CIA asset, or whatever. Hypothetically, sure. What is important is... I mean, that would account for the government's willingness to accept. I will just say that in this case, there is no indication from CIS, and in fact, in their memo that was released in 2009, or their question and answer that's cited too in my brief, it specifically says, there's a question that says, I was an unaccompanied alien child when placed in removal proceedings, but I am no longer an unaccompanied alien child. I want to file for asylum. Where do I file? You must file in asylum court. Since you are not an unaccompanied alien child at the time of filing your asylum application, and you are in removal proceedings, USCIS does not have jurisdiction over your claim. This was as early as 2009, I think it was like three days after the TVPRA went into effect. The fact that Mr. Alnaham's case got into CIS, I don't have an explanation as to why that one case happened. I do know that as a matter of process with our cases before this court... Your point is it shouldn't distort the interpretation. No. I mean, one case doesn't change. I mean, who knows why CIS decided to take that case. That was their decision. But it's clearly laid out in their memo that's been published on their website since the TVPRA went into effect, that it does not apply to aliens over the age of 18 at the time they filed for their asylum application. And in fact, if you read the TVPRA as a whole, it simply makes no sense to apply it in that fashion. But if we are attempting to discern congressional intent, it's not impossible in your view that Congress could have decided we have a group of people that come in as children under incredibly trying circumstances and we are willing to waive the one-year asylum filing time frame for them for life. They could do that. They could, but they did not here. That's the question, isn't it? No. I mean, I think if you really read it, how unaccompanied alien children are to be treated, they get protection by Health and Human Services. They do get... The Secretary of Health and Human Services actually says it shall ensure to the greatest extent practicable that all unaccompanied alien children are have access to counsel. All unaccompanied alien children, if we accept Ms. Lissa's definition of all unaccompanied alien children as including those who have already turned 18, then we're giving access to counsel to... No. My problem is, I think it's, to me, I'm struggling with the actual interpretation of the statutory language because it's not necessarily that these people remain an unaccompanied alien child. It's that the Act says there is this time limit, and when you become an alien child, that time limit goes away permanently. Now, that doesn't make them have to have all of the requirements when they're 40 of an unaccompanied alien child. It simply says that Congress had a time limit and said, for those people, we'll remove the time limit period. Respectfully, I disagree, Your Honor. What the Act actually says is subparagraph B, referring to the one-year filing application deadline, shall not apply to an unaccompanied alien child. An unaccompanied alien child is defined as an alien who has not attained the age of 18. How did you reach your brief time frame that you said she had to file by 4-1 of 98? I'm sorry, where did it... The brief indicated that she did not file within her filing deadline, which is 4-1 of 98. I believe that would have been her 18th birthday. Do you have the page number for the brief by chance? I'm afraid I don't. Your point in that regard was she's no longer a child. That status is now gone from her. Exactly. And therefore, she can never apply for asylum. Oh, no, not at all. She gets the benefit of the pre-existing regulations, which allow her to show that her minority was a disability that prevented her filing. And from 18 on... In 1998, Ethel had been in the United States for four years. She was 14. I'm sorry? Her 1998, which is the date your brief says... Oh, I know. I'm sorry. Can you tell me which page? I don't. I'm sorry. I have my notes, not your brief. She'd been in the United States for four years. Her visa had been expired for three years, but it was four years before she turned 18. So why would 98 be a time frame by which she was required to file? I'm trying to find it so I can explain that. Is it your best recollection? I believe her birthday was in April. That's why I'm thinking that, but let's see. Could you... Might it be possible simply to... Yeah, just supplement. If you can't find it, I can supplement. Just supplement. Okay, I can do that. And just very briefly, a letter explanation is just fine. Okay, I'm just not certain that I... Did I say she had to file it by age? I thought that...    24, or 40, or 60. I'm sorry?  24, or 40, or 60. I'm sorry? She can apply for asylum at age 24, or 40, or 60. I'm sorry? She can apply for asylum at age 24, or 40, or 60. But at that point, the question of how long she's been in this country, which might otherwise preclude her successfully applying, because she hasn't clearly and convincingly shown it's within one year, she can say, but, I was confined in a            I'm not sure. I'm not sure. I'm not sure. I'm not sure. I'm not sure. I'm not sure. I'm not sure. I'm not sure.   Would perhaps do anything that could permit her then asylum would be considered? Yes, and that's in fact actually what happened in this case. She presented her asylum application. The immigration judge found it was not filed within the one year period, and he considered her claim for withholding of removal and protection under the Convention Against Torture, and found she failed to meet a burden of proof for those two, that form of relief and protection. So, she did in fact, file an asylum application in this case, and she did try to establish an exception to the one year bar. So, it's not an absolute statute of limitations? No, no. Let's look at it. It only goes to those two provisions, the burden of proof. Waiver of a requirement. And the initial jurisdiction with CIS. And a couple of files. Yeah, that's all it goes to, and we're simply saying that that's a burden of proof provision that does not apply to minors. And you lose that status when you become an adult, and then you have to show some other basis or justification for the delay in filing your petition. And minority can count for part of that time. Right. I understand that. Okay. Yeah, I mean, she basically, after the age of 18, is in the same position as any other alien adult trying to file for asylum. She's not prevented from doing anything. Except an accompanied child. I'm sorry? Except an accompanied child. Well, that's why I said, other than an alien adult. She's in the same, after the age of 18, it's as if she was any other adult alien applying for asylum. She gets all the same benefits under the Act. She has the regulations. Except an adult alien accompanied by his or her parents. Because they're safe until 21. Well, but see, that can also work both ways, because that child has to rely on his parents who may not have an attorney, who may not file the best application, who may basically have just been kind of spinning wheels while he was waiting to be 21. Until he was 21. So then he's going to have to show from 18 to 21 why he didn't file his asylum application. Which will probably be because he was hopefully relying on his parents' successful application. But he does not, he is still at some point going to have to show why he didn't file the application. So in a sense, it's not really any different. Well, he's got three years more for his parents to file on his behalf. If they are filed and applying, he gets to stay in America until their application is resolved beyond his 21 years. So he or she has, until that whole system plays out, and then has the opportunity to come forward under the old rules. Right? I think essentially what you're asking is can that alien, now adult, but former child on his parents' application, can that person file his own application? After all of that has played out. What we're talking about is this equality of treatment or inequality. Sure, from 18 to 21, that's what you're concerned about. How large a category is this? This is so small I can't even tell you. Most of these are screened. This is the first case I've had that this situation comes up. We screen our cases and if there is someone who qualifies as an unaccompanied alien child, we remand it to the board to send it to the immigration judge for a determination of unaccompanied alien child status. And if the IJ makes those factual findings, then the case is administratively closed or terminated and then it is referred to CIS. That is the normal process. The Almahom case that Ms. Liss referred to was unusual in that the court had actually issued an order to show cause. So most of these are getting circumvented before briefing. The court's not even seeing them. But I mean, I'm going to say a handful. In the office, I personally carry 50 to 100 cases at any given time. I've maybe had three in the last, you know, since 2009. So it just doesn't... So the waiver of that time frame would not be a huge number of people. No. And I know my time is up, but I would just like to briefly mention that it is questionable to even reach the decision in this case given that Ms. Harman has refuge in Canada now. She's got the equivalent of asylum there. She's under no threat of being removed to Liberia. She didn't even request a stay of removal from this court if she was so fearful of going to Liberia. Instead, she just went back to Canada where she had tried to go in 2007 and where eight of her siblings live. So I guess I would also ask the court if this is the appropriate case to reach this issue given that Ms. Harman really has no fear of return at this point. Thank you. Thanks. Do you have a rebuttal, Ms. Lewis? First of all, I want to mention that there is no federal judicial review about the board's decisions on timeliness of asylums applications. So that's very significant because, for example, whether Ms. Harman's asylum application was erroneously, if she was not an unaccompanied alien child, whether there was a mistake about whether she should have been granted an extraordinary circumstance, no court can review that. That's pretty significant and that's another reason, which I think I didn't even think of before, why it's so important not to hold the unaccompanied alien children to the one-year deadline. Also, record AR 26 to 27. Again, I understand the government's argument. It's not, quote, a deadline. It's simply an extension of a benefit that says you don't have to establish that part of your application. You don't have to meet that requirement if you're an unattended alien child. In other words, you don't have to file, you come at age 4 or 14 or whatever, you don't have to file within one year. Unlike the situation if you come at age 24 or age 18, you do have to show clearly and convincingly that the application is filed within one year of the date of your arrival. I think I understand now the government's argument and I do think it seems to me it's not appropriate to view it as a statute of limitations or a deadline. It's saying, you know, whenever you come at age 17 and 364 days, we're not going to be concerned when you showed up. You can file your asylum application. 18 and one day, the minority will be taken into account and what about, why did you miss the one day, the one year, the ten years or whatever. It's still, there's still the opportunity provided you can otherwise show. And that opportunity is not reviewable by a federal court and so, and you know, there could be a lot of unreasonableness going on about whether somebody falls under the extenuating circumstances or not. For example, Ms. Harmon couldn't, you know, we know that she couldn't get together her TPS application, so why do we think she should have been able to get together her asylum application? In the government's hypothetical How is that different for a child, if I understand the system, than it is for let's say a 24-year-old adult who fails to show clearly and convincingly that his application has been, was filed within one year of arrival. I mean, he still has the opportunity to explain why it was he did not do so. He's incapable of meeting that burden of proof. The circumstances render him incapable of doing so, but he still has the opportunity to say, you know, I was incapacitated or whatever or that's why I didn't, I cannot prove that part of my application. Somebody who comes in as an adult, it's presumed that they should know that they should apply for asylum and they can't say, well, I didn't know you had to apply for one year. That's like very clear in case law. But let's say somebody came in when they're 10, are they going to be thinking about asylum when they turn 18 and one day old? How is it going to, and they don't have parents. How is it going to come to their mind that they should even apply for it? What about the child that comes, a child in the generic sense who arrives on his 18th birthday and knows no more, is no more aware or alert or attentive than the child who has been here for several years without any parental support or guidance? That's not true. They had parental guidance until they were seven, until they were almost 18 years old. It's very different when you have no parental, when you're an orphan from a younger age. You don't know the circumstances in the home country that pre-existed that child or that 18-year-old coming into our country for, let's say, it was a bona fide candidate for asylum. Let's assume that that's part of the issue. I mean, why should the person who came here as an unaccompanied child at whatever age have a benefit upon reaching majority, lifelong opportunity to claim asylum, to avoid being deported, removed, that an 18-year-old who leaves the home country under the same circumstances and has an equally bona fide claim for asylum has a greater burden of proof than the person who is exactly the same age that he or she is at the time that they both filed the asylum application? I guess you could say that Congress had to make an age cut off and that they felt that 18 is a typical age cut off for a lot of things and that maybe to some extent it's arbitrary. Well, you turn 18 and you lose the opportunity to be prosecuted in the juvenile court for the same conduct. My point is... There are other deadlines, like up until a certain age, a child can't make an admission. In immigration law, if somebody makes an admission until a certain age, they can't make admissions. After they're 16, maybe they can or maybe sometimes you can serve notice on a 16-year-old in immigration court, but you can't serve it on someone under 18. You have to give it to their guardian. I guess you have to have age cut-offs, but Congress here wanted to protect the vulnerable. They had to make a cut-off, but they wanted to... Does the word permanency relate to the child who does apply for the unaccompanied minor who does apply no matter how long she's been here, but prior to her 18th birthday, she acquires the permanent protections of a successful asylum applicant, regardless of when she came. That's the benefit. I think that's... If I may finish, please. Unlike the person who comes at age 18 and cannot meet that burden of proof, they simply don't have that benefit by virtue of their majority. You mean to say that? I think that... Like other benefits you're telling me about, I think, that evaporate once you reach certain mileposts because now you're presumed to be able to handle the matter for yourself. The unaccompanied alien child who applies before they're 18 is a particularly savvy child. Most children would not be aware of that, and often they're in custody. The reason that they are applying before they're 18, and a lot of what TEMF is about is like people in foster home, people in custody. I'm way past, and I'm belaboring the point, but to me it's a very important point. I'm about at the point where I simply don't see why Congress deliberately would extend a benefit to a 24-year-old who's been an adult for six years, that it would not extend to a 24-year-old who has been here, that the law does not extend to a 24-year-old who came when he or she was 22 and 360 days. They're in the same, presumed I just want to be, have the same cognizance of the law, or ignorance of the law. They both have, you know. Well, most children don't, and as a matter of fact, maybe their parents said, lay low when you get to America. We don't know that, though. I know, but we do know that most children. I think your time's up. We appreciate both your and take your case under advisement. I'm sorry, can I just make one more statement, because I feel like a lot of my time was used up by very long questions. Make your final statement. I want to point out administrative record 26 to 27, where the government said what their position was about the interpretation of TEFRA before this case, and also in the government's hypothetical, they were saying that somebody helped the person do it. Okay, we thank you both. Thank you.